IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERRIE BLAIR, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4-05-CV-333-Y |
| | § | |
| CORNERSTONE AMERICA, et al., | § | **ECF** |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## APPLICATION FOR PRELIMINARY INJUNCTION

Steven R. McCown
Texas State Bar No. 13466500
Eduardo F. Cuaderes Jr.
Texas State Bar No. 05200800
LITTLER MENDELSON
A Professional Corporation
2001 Ross Avenue
Suite 2600, Lock Box 116
Dallas, Texas 75201
214.880.8100
214.880.0181 (Facsimile)

Linda Ottinger Headley
Texas State Bar No. 15344600
Yvette Gatling
Texas State Bar No. 24007231
LITTLER MENDELSON
A Professional Corporation
1301 McKinney Street
Suite 1900
Houston, Texas 77010
713.951-9400
713.951.9212 (Facsimile)

ATTORNEYS FOR DEFENDANTS
CORNERSTONE AMERICA, et al.

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES...........................................................................................ii

I.     INTRODUCTION AND SUMMARY.................................................................1

II.    FACTS.................................................................................................................3

III.   ARGUMENT AND AUTHORITIES..................................................................7

       A.    Because Plaintiffs are Independent Contractors and not Employees, the
             Court Lacks Subject Matter Jurisdiction....................................................7

             1.    Whether Plaintiffs were independent contractors is a jurisdictional
                   issue....................................................................................................7

             2.    "Economic Reality" determines a party's independent contractor
                   status.................................................................................................10

             3.    Insurance agents in particular have been found to be independent
                   contractors........................................................................................10

             4.    The facts of this case demonstrate that Plaintiffs are independent
                   contractors........................................................................................12

                   a.     Control....................................................................................12

                   b.     Relative investments.............................................................14

                   c.     Opportunity for profit and loss.............................................14

                   d.     Skill and initiative.................................................................15

                   e.     Permanency of the relationship.............................................15

                   f.     Other Common Threads.........................................................16

       B.    Plaintiffs Lack Standing to Pursue a Preliminary Injunction Under Section
             217................................................................................................................18

       C.    Even if Plaintiffs had Standing, There is no Compelling Reason to Issue a
             Preliminary Injunction...............................................................................19

             1.    No substantial likelihood of success on the merits...................20

             2.    Substantial threat of irreparable harm.......................................20

             3.    Threatened injury outweighs any damage to Defendants...........21

             4.    Public interest...............................................................................21

IV.    CONCLUSION.................................................................................................22

CERTIFICATE OF SERVICE....................................................................................24

## TABLE OF AUTHORITIES

PAGE

### CASES

*Aldrich v. Skillern & Sons,*
24 WH Cases 1056 (N.D. Tex. 1980).................................................................. 20, 21

*Arbaugh v. Y&H Corp.,*
380 F.3d 219 (5th Cir. 2004) ..................................................................................... 9

*Bailey v. Gulf Coast Transportation, Inc.,*
280 F.3d 1333 (11th Cir. 2002) ............................................................................... 19

*Barnes v. Colonial Life and Accident Insurance Co.,*
818 F. Supp. 978 (N.D. Tex. 1993) ........................................................................ 9, 11

*Barnhardt v. New York Life Ins. Co.,*
141 F.3d 1310 (9th Cir. 1998) ................................................................................. 11

*Barrentine v. Arkansas-Best Freight Systems, Inc.,*
750 F.2d 47 (8th Cir. 1984) .................................................................................... 18

*Birchem v. Knights of Columbus,*
116 F.3d 310 (8th Cir. 1997) .................................................................................. 11

*Bjornson v. Daido Metal U.S.A., Inc.,*
12 F. Supp. 2d 837 (N.D. Ill. 1998) .......................................................................... 19

*Bowe v. Judson Burns, Inc.,*
137 F.2d 37 (3rd Cir. 1943) ..................................................................................... 19

*Carrell v. Sunland Construction Inc.,*
998 F.2d 330 (5th Cir. 1993) (same)....................................................................... 8, 14

*Continental Group, Inc. v. Amoco Chemical Corp.,*
614 F.2d 351 (3rd Cir. 1980) ................................................................................... 22

*Douglas v. E.G. Baldwin & Associates, Inc.,*
150 F.3d 604 (6th Cir. 1998) .................................................................................... 9

*EEOC v. Gilbarco, Inc.,*
615 F.2d 985 (4th Cir. 1980) ................................................................................... 18

*Greenlees v. Eidenmuller Enterprises, Inc.,*
32 F.3d 197 (5th Cir. 1994) ...................................................................................... 9

*Herman v. Express Sixty-Minutes Delivery Service,*
161 F.3d 299 (5th Cir. 1998) ................................................................................. 8, 10

*Hukill v. Auto Care, Inc.,*
192 F.3d 437 (4th Cir. 1999) .................................................................................... 9

*Jethroe v. Omnova Solutions, Inc.,*
412 F.3d 598 (5th Cir. 2005) ................................................................................... 18

*Knight v. United Farm Bureau Mutual Ins. Co.,*
950 F.2d 377 (7th Cir. 1991) .......................................................................... 11, 13, 15

*Morelock v. NCR Corp.,*
46 F.2d 682 (6th Cir. 1976), *rev'd on other grounds*, 435 U.S. 911 (1978)............................ 19

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Nationwide Mutual Ins. Co. v. Darden,*
  503 U.S. 318 (1990)................................................................... 10

*Nichols v. All Points Transport Corp.,*
  364 F. Supp. 2d 621 (E.D. Mich. 2005)............................................ 9

*Nunneley v. Farmers Insurance Exchange,*
  564 P.2d 231 (Okla. 1977)........................................................ 12

*Oestman v. Nation Farmers Union Ins. Co.,*
  958 F.2d 303 (10th Cir. 1992) ............................................... 11, 13

*Powell v. Florida,*
  132 F.3d 677 (11th Cir. 1998) ............................................... 18, 19

*Roberg v. Henry Phipps Estate,*
  156 F.2d 958 (2nd Cir. 1946)..................................................... 19

*Schwieger v. Farm Bureau Ins. Co of Nebraska,*
  207 F.3d 480 (8th Cir. 2000) .................................................... 11

*Steel Company v. Citizens for a Better Environment,*
  523 U.S. 83 (1998)................................................................. 8

*United States v. Spectro Foods,*
  544 F.2d 1175 (3rd Cir. 1976) .................................................. 22

*Womble v. Bhangu,*
  864 F.2d 1212 (5th Cir. 1989) .................................................... 9

### STATUTES

29 U.S.C. § 201 *et. seq.*............................................................ 1

29 U.S.C. § 207(a)(1)................................................................ 8

29 U.S.C. § 211 .............................................................. 2, 6, 19

29 U.S.C. § 215(a)(3)............................................................. 2, 8

29 U.S.C. § 217 .................................................................. 18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERRIE BLAIR, et al. | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4-05-CV-333-Y |
| | § | |
| CORNERSTONE AMERICA, et al., | § | **ECF** |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## APPLICATION FOR PRELIMINARY INJUNCTION

Defendants, Cornerstone America ("Cornerstone") (a division of Defendant Mid-West),

Mid-West National Life Insurance Company of Tennessee ("Mid-West"), and UICI ("UICI")

(incorrectly named as United Insurance Companies, Inc.) (collectively "Defendants") respond to

Plaintiffs' application for temporary injunction as follows:

## I.   INTRODUCTION AND SUMMARY

This case arises out of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*,

whereby Plaintiffs allege that they were not paid overtime for hours worked in excess of 40

hours per week. Plaintiffs' First Amended Collective Action Complaint at ¶ 20.[1] Plaintiffs also

allege that Defendants retaliated against them in violation of Section 215(a)(3) of the FLSA. *Id.*

at ¶ 29.

In applying for a preliminary injunction, Plaintiffs have placed the cart before the horse.

They ask the Court to enter a preliminary injunction to enjoin Defendant Cornerstone from

exercising its contractual right to terminate Plaintiffs' agent contracts because such a move

---

[1] Reference is made to Plaintiffs' First Amended Collective Action Complaint filed September 22, 2005,
even though it was stricken by the Court's Order of October 13, 2005 for failure to seek leave to amend.

allegedly violates 29 U.S.C. § 215(a)(3). Before the Court can entertain the notion of a preliminary injunction, however, it must first determine that it has subject matter jurisdiction. The Court lacks subject matter jurisdiction because Plaintiffs are independent contractors and not employees, and the FLSA applies only to *employees*. Absent a finding that Plaintiffs are *employees* of Defendants, the Court lacks subject matter jurisdiction over this case. Because this jurisdictional issue looms so largely over this case, the Court should first determine whether Plaintiffs are employees before it considers whether Plaintiffs are entitled to a preliminary injunction. Indeed, if the Court determines that it lacks subject matter jurisdiction, it must dismiss the case.

Assuming for purposes of argument that this Court has subject matter jurisdiction, Plaintiffs lack standing under the Section 217 of the FLSA to seek a preliminary injunction. The plain language of 29 U.S.C. § 211 confers authority only upon the Secretary of Labor to pursue injunctive relief under the FLSA. The majority of courts that have addressed this issue have held that private parties such as Plaintiffs lack standing to obtain a preliminary injunction. The one case cited by Plaintiffs in their application for preliminary injunction expresses a minority view.

Finally, even if the Court determines that it has subject matter jurisdiction and Plaintiffs have standing under Section 217, it does not automatically follow that a preliminary injunction should issue. There is no showing that Plaintiffs are likely to succeed on the merits of their claims because as independent contractors, they are not covered "employees" under the FLSA. Moreover, because Plaintiffs seek only restoration of monetary payments pursuant to their agent contracts—a remedy that is nothing more than damages flowing from an alleged breach of contract—there has been no showing of irreparable harm.

## II.    FACTS

### The relationship of the parties

Defendant Cornerstone is the sales and marketing division of Defendant Mid-West. Defs.' App at 1(¶¶3, 4).[2]  Cornerstone contracts with individuals such as Plaintiffs to become appointed agents of Mid-West.   The contract expressly states that these individuals are independent contractors, and that neither Cornerstone nor Mid-West controls the details of the work these individuals perform.  Defs.' App. at 1(¶4), 17.  Cornerstone agents in turn solicit members of the public at large (primarily small businesses and individuals) to purchase insurance products of Defendant Midwest. Defs.' App at 1(¶4).        Defendant UICI is the publicly-traded parent company of Defendant Mid-West.  It has never employed any of the Plaintiffs in any capacity, and has never contracted with any of the Plaintiffs.  Defs.' App. at 2(¶8).  Plaintiff Mann is an appointed agent of Defendant Mid-West appointed pursuant to his Cornerstone America Agent Contract ("Cornerstone Contract") last signed on December 29, 2003.

### The Cornerstone Contract

Mann's[3]  Cornerstone  Contract  contains  several  provisions  relevant  to  the jurisdictionally dispositive independent contractor vs. employee issue in this case. Entitled "**MY INDEPENDENT CONTRACTOR STATUS**," Section III of the contract provides in relevant part:

> By executing this Contract and accepting an appointment with **Mid-West**, I recognize and understand that I am an Independent Contractor and nothing in this

---

[2] Pursuant to Local Rule 7.1(i), documentary evidence submitted in support of Defendants' Response is contained in a separate appendix filed simultaneously herewith and is referred to in the short form as "Defs.' App. at _____." Reference to Plaintiffs' evidence is stated as "Pltfs.' App. at _____."

[3] Defendants highlight the provisions of Mann's contract because he submitted an affidavit in support of Plaintiffs' application for temporary injunction. The relevant provisions in Mann's contract are virtually the same for the other named plaintiffs in this case.

Contract or otherwise is intended to create an employer/employee relationship between me and **Cornerstone** and/or **Mid-West**. By executing this Contract, I agree not to assent to or take a position contrary to my status as an Independent Contractor pursuant to this Contract and I agree to accept the responsibilities placed on an Independent Contractor by Federal and State law, regulation, rule, or otherwise.

As an Independent Contractor, I will decide when, where and the manner and means to conduct my business activities. While **Cornerstone**, **Mid-West**, and/or their Agents or representative may from time to time provide me with models or guidelines, I recognize and acknowledge that I have complete discretion to set my business hours and schedule.

As an Independent Contractor, I will be responsible for payment of all expenses and fees incurred by me including, but not limited to, business overhead, transportation, state and federal income tax, self-employment tax, social security tax, unemployment tax and workers' compensation. I am responsible for and shall pay all taxes, duties, assessments and other governmental charges related to my performance under this Contract. I am likewise responsible for furnishing all equipment and materials incident to my performance under this Contract.

\* \* \*

As an Independent Contractor, I understand that I will receive an IRS form 1099, for income tax purposes, reflecting the amount of Commissions posted to my Account.

I will not incur any obligation, including but not limited to, any lease for office space and/or equipment, any advertising, any debt or liability in the name of or on behalf of **Cornerstone** and/or **Mid-West**, but will ensure that my business and my office reflects that I am a "representative," an "Agent" or an "Affiliate."

Defs.' App. at 7.

Directly above Mann's signature on page 13 of the Cornerstone Contract, Mann

acknowledges that:

It is agreed and understood between **Cornerstone** and me, that my Contract does not and is not intended to give **Cornerstone** the power or right to control the material details of the work I perform in connection with this Contract. I, as an Independent Contractor, and as intended by my Contract and the parties, have the sole and exclusive power and right to control the details of my work.

Defs.' App. at 17.

## The DSL Supplement

Agents are eligible for "elevation" of their contract status, in which case they become "eligible to receive overwrite Commissions based on sales of other agents" in their district Hierarchy. Defs' App. at 1(¶5), 12. The term "Hierarchy" is defined as the "organization of all **Cornerstone** Agents in successive levels, each level with individual ADVANCE and COMMISSION rates and subordinate to the level above." Defs.' App. at 20.

In order to accept this arrangement, an agent must execute a District Sales Leader Supplement to Agent Contract with Cornerstone America ("DSL Supplement"). Defs.' App. at 1(¶5), 20-22. The DSL Supplement is incorporated in the agent contract. Defs.' App. at 20. Plaintiff Mann executed a DSL Supplement on January 16, 2005. Directly above Mann's signature on page 3 of the DSL Supplement, Mann acknowledges that:

> It is agreed and understood between CORNERSTONE AMERICA, a division of MID-WEST and Me, that this District Sales Leader Supplement does not and is not intended to give CORNERSTONE AMERICA, a division of MID-WEST, the power or right to control the manner or means of the business activities that I perform in connection with My District Sales Leader Supplement. I, as an independent contractor, and as intended by My CORNERSTONE AMERICA Agent Contract, have the sole and exclusive power and right to determine when, where and the manner and means by which I conduct my business activities.

Defs.' App. at 22.

## Cornerstone's Sales Force

It is a common practice in the insurance industry for insurance companies such as Mid-West to sell insurance policies through a sales force of independent contractors. Defs.' App. at 2(¶9). Thus, pursuant to its Cornerstone Contracts, Cornerstone and Mid-West appoint independent contractor/agents to sell Mid-West's insurance products to the public at large. Agents are free to set their own work hours, without any control by Cornerstone or Mid-West. Defs.' App. at 2(¶10), 17. Cornerstone does not supervise its agents' daily activities and does not

require that they report their daily activities. Cornerstone agents are only limited by their own initiative and drive as to the amount of work they choose to pursue. Defs.' App. at 2(¶10).

On occasion, Cornerstone and Midwest will convene agent meetings in order to review and discuss compliance issues and regulatory matters as well as describe product information regarding new or existing insurance products. Defs.' App. at 2(¶11), 6. Because the insurance business is a highly regulated industry on a state by state basis, such meetings are necessary in order to ensure that Mid-West maintains compliance with various state insurance regulations. Appointed agents may also attend regular weekly business turn in meetings as they so desire; attendance at these meetings is not required. *Id.*

Cornerstone agents must make a substantial investment of their own capital and resources in order to carry on their business as an agent for Cornerstone. The purchase of equipment, supplies, and tools necessary to solicit sales for Mid-West's insurance products is borne exclusively by the agent. Agents must provide their own office space, pay the rent on that office space, purchase their own equipment (*i.e.* phone, computer, cell phone, office supplies, fax machine, automobile, etc.). Agents must procure the requisite license from various state insurance regulators where they conduct business and are responsible for any expenses or costs in procuring their license. Defs.' App. at 2(¶12), 7.

Cornerstone agents are paid solely on a commission basis and receive no regular salary. Their income depends entirely upon their own initiative, skill, and desire to work. Obviously, the harder an agent works and solicits business, the more money he or she will earn. Cornerstone agents accrue no company-provided benefits. They receive no paid vacation, health insurance benefits, or company paid pension or 401K benefits.[4] Defs.' App. at 2(¶13).

---

[4] Cornerstone agents do participate in a non-qualified agent stock accumulation plan sponsored by Defendant UICI known as the Dynamic Equity Fund. Through this program Cornerstone agents can

Cornerstone issues an IRS form 1099 to its agents. The form 1099 notifies the agent and the IRS of the amount of *nonemployee* compensation earned by that agent in the calendar year. Cornerstone does not withhold any income taxes or deduct employment taxes from the agents' earnings. In addition, Cornerstone does not pay any employment taxes for its agents. Defs.' App at 3(¶14-15), 7.

By the express terms of the Cornerstone Contract, Cornerstone agents agree not to sell or solicit any insurance products of any insurance company other than insurance companies that maintain agreements with Cornerstone or Mid-West. Defs.' App at 3(¶16), 9. Cornerstone requires this dedicated relationship in order to protect its sales leads. Cornerstone goes to great expense to develop and procure sales leads. If Cornerstone's agents were allowed to sell insurance products of competing insurance companies, the efforts expended by Cornerstone to procure sales leads would be compromised and give an untoward advantage to its competitors.

On or about August 26, 2005, Cornerstone exercised its contractual right to cancel the Cornerstone Contracts of Sherrie Blair, Andrew Bowman, Chris Fox, Bob Howell, and Mark Mann. Cornerstone took this action after these individuals took "a position contrary to [their] status as an Independent Contractor" in breach of Section III of their Cornerstone Contracts. Defs.' App. at 7.

---

accumulate participant credits equivalent to shares in UICI stock. In order to be eligible to participate in the Dynamic Equity Fund, the agent *cannot* be an employee of either Cornerstone or Mid-West. Defs.' App. at 2-3(¶13).

## III.  ARGUMENT AND AUTHORITIES

### A.  Because Plaintiffs are Independent Contractors and not Employees, the Court Lacks Subject Matter Jurisdiction

1.  Whether Plaintiffs were independent contractors is a jurisdictional issue.

The FLSA generally requires that *employers* pay *employees* overtime for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1) ("no *employer* shall employ any of his *employees* … for a workweek longer than forty hours unless such employee receives compensation …"). Similarly, only *employees* are covered by the anti-retaliation provisions of the FLSA. 29 U.S.C. § 215(a)(3) (It shall be unlawful "to discharge or in any other manner discriminate against any *employee* because such *employee* has filed any complaint …"). Because the FLSA refers only to "employees," there is no question that the FLSA does not cover independent contractors. *See Herman v. Express Sixty-Minutes Delivery Service*, 161 F.3d 299, 306 (5th Cir. 1998) (affirming dismissal of FLSA claims where it was found that plaintiffs were independent contractors); *Carrell v. Sunland Construction Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (same).

This "independent contractor vs. employee" distinction is critical because it goes to the threshold issue of whether this Court has jurisdiction to adjudicate Plaintiffs' claims. The Court cannot entertain a motion for preliminary injunction until it first determines whether it has jurisdiction. *See Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("the first and fundamental question is that of jurisdiction"). The question becomes then, whether the "independent contractor vs. employee" distinction dictates subject matter jurisdiction or whether it merely goes to the substantive merits of the case. Relevant Fifth Circuit authorities strongly suggest that it is a jurisdictional issue.

Although Defendant was unable to find any binding Fifth Circuit authority that addresses

the "independent contractor vs. employee" jurisdictional distinction in the context of an FLSA action,[3] there is ample authority in the Fifth Circuit and other circuit courts of appeals that address this issue in the context of other federal statutes that regulate the employer/employee relationship. For example, in *Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989), it was held that the district court would lack subject matter jurisdiction if it determined that the defendant was not an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964. The Fifth Circuit reached similar results in *Greenlees v. Eidenmuller Enterprises, Inc.*, 32 F.3d 197, 200 (5th Cir. 1994) (the district court lacked subject matter jurisdiction because the company never employed more than 15 employees) and *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 224 (5th Cir. 2004) (established precedent requires dismissal for lack of jurisdiction because the defendant did not meet the threshold definition of employer), *cert. granted*, ____ U.S.____, 125 S. Ct. 2246 (2005). Indeed, this Court in *Barnes v. Colonial Life and Accident Insurance Co.*, 818 F. Supp. 978, 980 (N.D. Tex. 1993) (Sanders, J.) dismissed a Title VII action for lack of jurisdiction when it was determined that the plaintiff was in independent contractor and not an employee. *Barnes* is particularly instructive because the plaintiff in that case was an insurance agent who had contracted with an insurance company to market and sell the defendant's insurance products; facts very similar to the instant case.

Cases involving the Family Medical Leave Act, a federal statute similar in many respects to the FLSA, are no different. In *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir. 1999), the Fourth Circuit held that subject matter jurisdiction is absent when the defendant did not meet the definition of a "covered employer" under the FMLA. The Sixth Circuit made the same

---

[3] FLSA cases holding that employer/employee status is not a jurisdictional issue include *Velez v. Vassallo*, 203 F. Supp. 2d 312, 330 (S.D.N.Y. 2002) and *Reich v. Troyer*, 3 WH Cases 574, 576 (E.D. La. 1996). Neither of these cases are worthy of consideration in light of the trend in the Fifth Circuit that these types of cases go to the threshold issue of subject matter jurisdiction.

determination in *Douglas v. E.G. Baldwin & Associates, Inc.*, 150 F.3d 604, 608 (6th Cir. 1998). Finally, in another case involving the independent contractor/employee dichotomy, the district court in *Nichols v. All Points Transport Corp.*, 364 F. Supp. 2d 621, 634 (E.D. Mich. 2005) dismissed the case on jurisdictional grounds after it determined that the plaintiff was an independent contractor.

The foregoing cited authorities make clear that whether a plaintiff is an independent contractor or an employee is a critical distinction that goes to the heart of the Court's authority to preside over this case in the first instance. Thus, before the Court can address the merits of Plaintiffs' application for preliminary injunction, it must first decide whether Plaintiffs are independent contractors or employees of Cornerstone. If indeed the Court lacks subject matter jurisdiction, it should dismiss the case and deny Plaintiffs' application for preliminary injunction.

> 2.    "Economic Reality" determines a party's independent contractor status.

In determining whether a party is an independent contractor as opposed to an employee, the Fifth Circuit applies the well known "economic reality" test. The economic reality tests boils down to a determination of whether the plaintiff "is, as a matter of economic reality, in business for himself or herself." *Herman v. Sixty-Minutes Delivery Service*, 161 F.3d 299, 303 (5th Cir. 1998). The economic reality test consists of five factors, with no single factor being outcome determinative. *Herman*, 161 F.3d at 303. These factors are: 1) the degree of control exercised by the alleged employer; 2) the extent of the relevant investments of the worker and the alleged employer; 3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; 4) the skill and initiative required in performing the job; and 5) the permanency of the relationship. *Id. See Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1990) (applying common law factors in determining whether party was an employee or an

independent contractor for purposes of ERISA).

        3.     Insurance agents in particular have been found to be independent
             contractors.

Applying the economic reality test, "federal courts have consistently held that insurance agents are unprotected independent contractors." *Birchem v. Knights of Columbus*, 116 F.3d 310, 313 (8th Cir. 1997)(holding plaintiff/insurance agent was an independent contractor). Indeed, virtually every federal court to have addressed this independent contractor issue in the context of an insurance agent claiming employee status has held that insurance agents are independent contractors.[6] *See, e.g., Barnes*, 818 F. Supp. at 980-81 (insurance agent held to be an independent contractor where contract so stated, she was paid only by commission, no taxes were withheld, she received 1099s, no employee benefits, and agent was required to purchase all office equipment); *Schwieger v. Farm Bureau Ins. Co of Nebraska*, 207 F.3d 480, 485 (8th Cir. 2000) (agent held to be independent contractor where contract so stated and provided for availability of "training courses, sale methods, and material or similar aids," which were provided "in order to help them improve their own businesses."); *Barnhardt v. New York Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998) (agent held to be an independent contractor where contract so stated, paid solely by commission, and controlled day to day operations of his business); *Oestman v. Nation Farmers Union Ins. Co.*, 958 F.2d 303, 306 (10th Cir. 1992) (agent held to be independent contractor where contract so provided, paid solely by commissions, no taxes were withheld, furnished his own office space and equipment, and was free to work as he chose); *Knight v. United Farm Bureau Mutual Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991) (holding that insurance agent was an independent contractor where contract so provided, agent

---

[6] Defendants were unable to find any federal case holding that insurance agents were employees.

was paid by commission and paid her own taxes).[7]

The overwhelming authority in favor of Plaintiffs' independent contractor status stands in stark contrast to the paucity of authority cited by Plaintiffs in support of their contention that they are employees. Plaintiffs cite one single insurance case, *Nunneley v. Farmers Insurance Exchange*, 564 P.2d 231 (Okla. 1977), in support of their argument that they are employees entitled to compensation under the FLSA.[8] *Nunneley* carries little weight when compared to the overwhelming majority of federal case authorities that find otherwise. Moreover, while *Nunneley* makes a passing reference to the economic reality test, it does not analyze in any great depth the five factors adopted by the Fifth Circuit.

    4.    The facts of this case demonstrate that Plaintiffs are independent contractors.

The material facts of this case are no different from the cases cited above, where there is an overwhelming consensus among federal courts that insurance agents are indeed independent contractors. Applying the five factor economic reality test in this case reveals that Plaintiffs are independent contractors.

    a.    Control

There is no question that Plaintiffs control their own work, including when, where and the manner and means under which they conduct their business activities. This is not surprising

---

[7] Federal district courts are equally united in finding that insurance agents are independent contractors. *See, e.g., EEOC v. Catholic Knights Ins. Society*, 915 F. Supp. 25, 29 (N.D. Ill. 1996) (company lacked requisite control to constitute and employer/employee relationship); *Robinson v. Bankers Life and Casualty Co.*, 899 F. Supp 848, 849 (D. N.H. 1995) (agent was found to be an independent contractor where contract so provided, paid on a commission basis, no taxes withheld, received 1099s, received no employee benefits, controlled his own business, paid office expenses, and responsible for obtaining license or permits); *Dixon v. Burman*, 593 F. Supp. 6, 12 (N.D. Ind. 1983) (agent was an independent contractor because he was paid solely by commissions, no taxes withheld, received advances constituting loans, did not have to report daily activities to company and received no employee benefits).

[8] Ironically, even though the Oklahoma Supreme Court held in *Nunneley* that the plaintiff was an employee, it ultimately ruled that he was subject to the outside sales exemption under the FLSA, and that he was not entitled to damages under the FLSA. *Nunneley*, 564 P.2d 569. This case hardly supports the

in light of the fact that Plaintiffs expressly agreed in their Agent Contract and the DSL Supplement that they controlled the manner and means of their business activities and that Cornerstone had neither control nor the right to control the material details of Plaintiffs' work. Defs' App at 1(¶¶4,6), 7, 22. Moreover, lack of control is evident by the fact that agents such as Mark Mann are free to set their own work hours, without any control by Cornerstone or Mid-West and that Cornerstone neither supervises Plaintiffs' daily activities nor requires them to report their daily activities. Defs.' App. at 2(¶10), 7. Courts have found that an agent's ability to control the manner and means of their insurance sales to be indicative of independent contractor status. *See Osteman*, 958 F.2d 303, 306 (lack of control over daily activities weighed in favor of independent contractor status); *Dixon*, 593 F. Supp. at 12 ("Defendant did not exercise control over the details of plaintiff's work, they simply agreed to pay a commission for accomplished results.").

Mann's self-serving statements regarding the degree of control Cornerstone allegedly exercises over him and the other Plaintiffs does nothing to establish employee status. Mann, for example, claims that Cornerstone mandated that he sell only Cornerstone products, which made him completely dependent on Cornerstone for his livelihood. Pltfs.' App. at 2, ¶ 8. This fact, however, does not establish control. See *Knight*, 950 F.2d at 378 (independent contractor status found where agent was not allowed to sell insurance for any other company); *Barnes*, 818 F. Supp. at 981 (agent was an independent contractor even though she was prohibited from selling products of a competing insurance company).

Mann also contends that he is subject to Cornerstone's control because he was required to submit advertising copy to Cornerstone for compliance approval, and that Cornerstone had to approve any advertising done by him to assure compliance with state law, rules and regulations.

outcome Plaintiffs seek in this case.

Pltfs.' App at 1, ¶¶ 2, 6. Again, however, such facts do not establish the necessary degree of control to create an employer/employee relationship. *See Oestman*, 958 F.2d at 306 (approval of advertising is not control).

Mann's affidavit makes several other self-serving statements in an effort to create an employer/employee relationship where such a relationship has never existed. Mann, for instance, claims that Cornerstone set the policies on the way he sold Cornerstone's products, and that Cornerstone set the price for all of the insurance products he sold. Pltfs.' App. at 2, ¶¶ 9, 12. None of these allegations, even if true, establish control. As an insurance company, Cornerstone and Mid-West must ensure that its agents' activities are in compliance with applicable regulatory requirements. Defs.' App. at 2(¶11), 6. It is, therefore, reasonable that Cornerstone would require its agents to comply with its standards. In addition, this degree of control described by Mann simply does not establish employee status. *Barnhart*, 141 F.3d at 1313 (imposition of minimum standards not enough to overcome independent contractor status).

b.     Relative investments

The relative investments of the parties leans in favor of independent contractor status. To be sure, Mid-West is a large insurance company with an infrastructure designed to underwrite, administer and pay the claims of the insurance products sold by Plaintiffs. Nonetheless, Plaintiffs' relative investments are significant. Plaintiffs are required to provide their own office space, pay the rent on that office space, purchase their own equipment (*i.e.* phone, computer, cell phone, office supplies, fax machine, automobile, etc.). Defs.' App at 2(¶12), 7. In addition, Agents must procure the requisite license from state insurance regulators and are responsible for any expenses or costs in procuring that license. Where the facts show that a plaintiff must pay for virtually all of his or her tools and equipment, the relative investment prong weighs in favor of independent contractor status. *See Carrell*, 998 F.2d at 333 (plaintiffs were found to be

Case 4:05-cv-00333-Y  Document 23  Filed 10/20/05  Page 19 of 28  PageID 112

independent contractors where they were required to purchase all of their tools and equipment).

        c.      Opportunity for profit and loss

It is undisputed that Plaintiffs completely control their own opportunities for profit and loss. The harder they work, the more they can potentially earn. Mann admits as much by confessing that he could increase his profits through hustling harder at recruiting new sales people and creating new sales. Pltfs.' App at 2, ¶ 14. The fact that there is an integral economic relationship between Cornerstone and its agents is not controlling. Rather, it is the agents' ability to sell insurance that ultimately controls the amount of profit an agent can make, and it is the agents' ability to control his profits that establishes an independent contractor relationship. *Knight*, 950 F.2d at 381.

        d.      Skill and initiative

Plaintiffs' success depends entirely on their own skill and initiative in selling insurance products. While Cornerstone may have provided training to the agents to assist them in their businesses, the key point as explained by the court in *Knight*, is that "[e]ven though Farm Bureau trained Ms. Knight, *it was her application of those skills that mattered.*" 950 F.2d at 380 (emphasis added). So too is this critical in this case. Plaintiffs became insurance professionals through their own efforts and expense by obtaining a license to sell insurance through their various state insurance regulating authorities. It is their own individual drive and initiative that establishes them as independent contractors.

        e.      Permanency of the relationship

There is no question that the permanency of the relationship factor weighs in favor of finding independent contractor status. The Cornerstone Contract provides that either party may terminate the contract without cause by one party sending written notice of the cancellation to the other party. Defs.' App at 2(¶7), 11. Some agents remain with the company for years, others

DEFENDANTS' RESPONSE TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION – Page 15

stay only a few months. Defs.' App. at 2(¶7). The fact that Mann remained an agent for almost six and one-half years does not necessarily lead to a finding that he was an employee. Indeed, the court in *Barnhart* held that the plaintiff was an independent contractor despite the fact that there was relatively long-term relationship between the parties and that the contract was terminable at-will. *Barnhart*, 141 F.3d at 1313.

            f.      Other Common Threads

The common threads that run through the independent contractor cases are remarkably similar to the facts of the instant case. In virtually every case holding that the plaintiff was an independent contractor, courts have observed the following factors:

- The parties' contract stated that the plaintiff was an independent contractor;

- The defendant had no control over the day to day activities of the plaintiff;

- The plaintiff was paid on a commission basis;

- The defendant withheld no income taxes and paid no employment taxes;

- The defendant reported plaintiff's income on an IRS form 1099;

- The plaintiff paid for his or her equipment and tools;

- The plaintiff had no company-provided employment benefits like health insurance or paid vacation; and

- The plaintiff had to obtain his or her own license to sell insurance.

All of these listed factors are present in the instant case. Both the Cornerstone Contract and the DSL Supplement expressly state that Plaintiffs are independent contractors. Cornerstone has no control over the day to day business activities of Plaintiffs. Plaintiffs are paid on a commission basis. Cornerstone does not withhold income taxes from Plaintiffs commission payments, and it does not pay any employment taxes for Plaintiffs. Cornerstone reports

Plaintiffs' income on IRS form 1099.  Plaintiffs pay for 100 percent of all of their business expenses, including purchase of tools and equipment.  Finally, Plaintiffs must pay for and obtain the necessary license to sell insurance in the states where they conduct business.  Defs.' App. at 2(¶12), 3(¶14), 7, 26-27.

Finally, there is nothing more indicative of Plaintiffs' independent contractor status than the testimony of one of the Plaintiffs in this case.  Testifying under oath in the case of *Quinn v. UICI et al*, No. 290251 in the Bexar County Court of Law No. 2, Chris Fox had these things to say about his independent contractor status:

Q.   [by Mr. Goldberg]  How would you gauge your success?  When you tell these prospects how successful you are—

A.   [by Chris Fox]  I work when I want to.

Q.   Okay

A.   I'm in complete control of my own business.  I don't have to answer to anybody, and there is no greater feeling than that.

* * *

Q.   Does Cornerstone have any policies or procedures about dating within the company?

A.   No, because we're all independent contractors.

* * *

Q.   Are you aware of whether or not Cornerstone has a sexual harassment policy or grievance procedure?

A.   No I'm not aware of that.

Q.   Do you think the company should?

A.   It doesn't matter to me.  I'm an independent contractor.  What the company decides to do is up to them.

* * *

Q.   You denied this admission.  You said—The admission asked that Defendants UICI, Midwest National Life Insurance Company of Tennessee and/or Cornerstone America controlled the progress of your work during your affiliation, employment contract with them"?

A.      That's correct.

Q.      And you say they have no control whatever?

A.      No.

Q.      No input whatsoever?

A.      No. They can monitor it, but they don't have control over what I do on a weekly basis.

* * *

Q.      What is your relationship with Cornerstone America?

A.      I'm a contracted independent contractor with them.

Defs.' App. at 29-32.   Plaintiffs cannot have it both ways, and they should be judicially estopped from asserting that they are employees of Cornerstone when Mann previously took an opposite position under oath.   *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)(dismissing the plaintiff's Title VII claim on grounds of judicial estoppel).

The forgoing discussion makes clear that Plaintiffs are independent contractors and not employees.   Because of this, the Court should deny Plaintiffs' application for preliminary injunction and dismiss this case for lack of subject matter jurisdiction.

## B.      Plaintiffs Lack Standing to Pursue a Preliminary Injunction Under Section 217

In this case, Plaintiffs seek a preliminary injunction under Section 217 and request that the Court:

> enjoin Defendants from altering the status quo of the business relationship between the parties on the basis of any party's election to engaged in federally protected activity and continue payment of current and/or residual earnings due each party as previously agreed and prohibit Defendants from retaliating against any future party in the same fashion.

Pltfs.' App. for Prelim. Inj. at ¶ 24.

In seeking this preliminary relief, Plaintiffs rely on 29 U.S.C. § 217, which authorizes a district court to "restrain violations of Section 215 [of the FLSA]."   The overwhelming majority

of courts, however, hold that only the Secretary of Labor has standing to pursue injunctive relief under Section 217, and that private parties may not obtain an injunction under Section 217. *Powell v. Florida*, 132 F.3d 677, 678-79 (11ᵗʰ Cir. 1998); *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 750 F.2d 47, 51 (8ᵗʰ Cir. 1984); *EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 995 (4ᵗʰ Cir. 1980); *Morelock v. NCR Corp.*, 546 F.2d 682, 688 (6ᵗʰ Cir. 1976), *rev'd on other grounds*, 435 U.S. 911 (1978); *Powell v. Washington Post Co.*, 267 F.2d 651, 652 (D.C. Cir. 1959); *Roberg v. Henry Phipps Estate*, 156 F.2d 958, 963 (2ⁿᵈ Cir. 1946); *Bowe v. Judson Burns, Inc.*, 137 F.2d 37, 39 (3ʳᵈ Cir. 1943); *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837, 843 (N.D. Ill. 1998). These authorities rely on the plain language of the FLSA that authorizes the Secretary of Labor to seek injunctive relief under Section 217. 29 U.S.C. § 211 ("[T]he administrator shall bring all actions under section 217 of this title to restrain violations of this chapter.").

Plaintiffs rely on *Bailey v. Gulf Coast Transportation, Inc.*, 280 F.3d 1333 (11ᵗʰ Cir. 2002) to support their argument that they have standing to pursue a preliminary injunction pursuant to Section 217.[9] *Bailey*, however, ignores the plain language of the FLSA, which expressly authorizes only the Secretary of Labor to pursue an injunction under Section 217. *See* 29 U.S.C. § 211. Because Section 217 is silent on whether a private party may seek an injunction under Section 217, the better course would be to find that Plaintiffs lack standing.

---

[9] Plaintiffs did not cite and Defendants are not aware of any Fifth Circuit authorities holding that Plaintiffs have standing under Section 217 to pursue a preliminary injunction. In *Martinez v. Deaf Smith County Grain Processors, Inc.*, 583 F. Supp. 1200, 1212 (N.D. Tex. 1984) (Robinson, J.) granted a permanent injunction pursuant to Section 216 and ordered that defendant may not file a claim in state court against the plaintiff in state court. However, the opinion does not address whether a plaintiff has standing to pursue a preliminary injunction pursuant to Section 217.

C.  **Even if Plaintiffs had Standing, There is no Compelling Reason to Issue a Preliminary Injunction.**

Assuming *arguendo* that Plaintiffs have standing to pursue a preliminary injunction under Section 217, they must still establish that they are entitled to a preliminary injunction. A preliminary injunction, however, is an extraordinary remedy that should not be granted unless Plaintiffs can make a clear showing that they are entitled to relief. *Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). In order to be entitled to a preliminary injunction, Plaintiffs must show: 1) a *substantial* likelihood of success on the merits; 2) a *substantial* threat that Plaintiffs will suffer irreparable injury of the preliminary injunction is denied; 3) the threatened injury outweighs any damage that the injunction might cause Defendants; and 4) the injunction will not disserve the public interest. *Id.* (emphasis added).

      1.  No substantial likelihood of success on the merits.

The detailed arguments set forth above regarding Plaintiffs' independent contractor status make clear that Plaintiffs cannot succeed on the merits of their case. Whether couched as a jurisdictional issue or an issue that goes to the merits of Plaintiffs' claims, there is no question that in order to have a claim under the FLSA, Plaintiffs must be employees. Because the uncontroverted evidence plainly demonstrates that Plaintiffs are independent contractors, their FLSA claims fail as a matter of law. Accordingly, they cannot show a substantial likelihood of success on the merits, and their request for a preliminary injunction should be denied.

      2.  Substantial threat of irreparable harm.

There is no evidence that Plaintiffs will suffer irreparable harm unless Cornerstone is enjoined from exercising its contractual rights to cancel the contracts of agents who have repudiated their independent contractor status in breach of the contract. All Plaintiffs seek is to have their income restored during the pendency of this civil action. However, loss of income is

not the type of special harm that will support a preliminary injunction. *Aldrich v. Skillern & Sons*, 24 WH Cases 1056, 1057 (N.D. Tex. 1980) (preliminary injunction denied in an FLSA case where all the plaintiffs could show was loss of income). *Aldrich* is a persuasive decision because relevant arguments of the case are very similar to the instant case. In *Aldrich*, the plaintiffs sought a preliminary injunction in the form of an order reinstating to their former positions after they were terminated allegedly in violation of the anti-retaliation provisions of the FLSA. *Id.* at 1056. The court denied the preliminary injunction in part because the plaintiffs had not shown any special harm beyond loss of income. *Id.* at 1057. This Court should follow the reasoning of *Aldrich* and deny Plaintiffs' application for preliminary injunction. They allege no special harm beyond loss of income.

Moreover, there is no danger that Cornerstone's actions will "thwart an employee's participation in this suit," Pltfs.' App for Prelim. Inj. At 9, because the parties have agreed to address the collective action aspect of this case after there has been a determination on Plaintiffs' independent contractor status. *See* Joint Status Report at ¶ 6, filed 9/14/05. Thus, because there is no immediate plan for other potential plaintiffs to opt in to this FLSA suit, there can be no "thwarting" affect.

        3.     Threatened injury outweighs any damage to Defendants.

Balancing the interests between the threatened injury and the damage to Defendants if a preliminary injunction is granted weighs in favor of denying Plaintiffs' application. Cornerstone had a contractual right to cancel Plaintiffs' contracts because they now take a position contrary to their status as independent contractors, a direct breach of their contracts. Plaintiffs do not deny breaching the contract; instead, they argue that the contract provision setting forth their independent contractor status is void against public policy. There is nothing contrary to public policy that precludes Plaintiffs from declaring their independent contractor status by contract,

and there is nothing contrary to public policy that precludes Cornerstone from terminating Plaintiffs when they breached their agent contracts.

    4.    Public interest

Plaintiffs' motion fails to articulate the public interest that mandates entry of a preliminary injunction in this case. Plaintiffs simply demand a preliminary injunction because Cornerstone's action in exercising its contractually rights allegedly "can effectively thwart an employee's participation in making a claim under the FLSA…" Pltfs.' App. for Prelim. Inj. At 9. However, the public interest prong of the four-part preliminary injunction test must be something "other than that resulting from the defendant's violation of the act itself." *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351, 358 (3rd Cir. 1980)(quoting *United States v. Spectro Foods*, 544 F.2d 1175, 1181 (3rd Cir. 1976)). Plaintiffs must articulate something more concrete and specific that demonstrates a genuine harm to the public interest if the preliminary injunction is not entered. Having failed to do this, the Court should deny Plaintiffs' application for preliminary injunction.

## IV.    CONCLUSION

For the myriad of reasons set forth above, Defendants respectfully request that the Court deny Plaintiffs' motion for preliminary injunction. In addition, Defendants request that the Court dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ Steven R. McCown

Steven R. McCown
Texas State Bar No. 13466500
Eduardo F. Cuaderes Jr.
Texas State Bar No. 05200800

LITTLER MENDELSON
A Professional Corporation
2001 Ross Avenue
Suite 2600, Lock Box 116
Dallas, Texas  75201
214.880.8100
214.880.0181 (Facsimile)

Linda Ottinger Headley
Texas State Bar No. 15344600
Yvette Gatling
Texas State Bar No. 24007231
LITTLER MENDELSON
A Professional Corporation
1301 McKinney Street
Suite 1900
Houston, Texas 77010
713.951-9400
713.951.9212 (Facsimile)

ATTORNEYS FOR DEFENDANTS
CORNERSTONE AMERICA, et al.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Response to Plaintiffs' Application for Preliminary Injunction has been served by placing same in the United States Mail on this 20th day of October 2005, and mailed to the following:

Kerry McGill                              Larry Flournoy
Greer & McGill, P.C.                      Graham & Smith, L.L.P.
200 East Sixth Street                     5500 Preston Road
Suite 204                                 Suite 300
Austin, Texas  78701                      Dallas, Texas  75205


/s/Eduardo F. Cuaderes Jr.
Eduardo F. Cuaderes Jr.


Firmwide:80518622.2 050005.1004