## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERRIE BLAIR, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| CORNERSTONE AMERICA, MIDWEST | § | NO. 4:05-CV-333-Y |
| NATIONAL LIFE INSURANCE | § | |
| COMPANY OF TENNESSEE, AND | § | |
| UNITED INSURANCE COMPANIES, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiffs' Reply to Defendants' Response to Plaintiff's Application for Preliminary Injunction as follows:

## I.   Defendants wrongly interpret the law applicable to this case.

Defendants argue that because some courts have found insurance agents to be independent contractors this court should rule that the Plaintiffs are not entitled to FLSA protection. This argument fails for three reasons:

1. The cases cited by Defendants are not FLSA cases and consequently apply a more restrictive test than that used by the FLSA in determining employee status;

2. Other federal and state courts have found insurance agents to be employees rather than independent contractors; and most importantly

3. The Plaintiffs are not mere insurance agents but have been promoted to recruiters and middle managers integral to Defendants' insurance sales company.

## A.   Defendants cite cases that use a more restrictive test of employee status than the FLSA.

Defendants cite several cases involving insurance agents to support their argument, however, *all* of the cases they cite are under statutes other than the FLSA. The FLSA is not the ADEA, the ADA, ERISA, or Title VII. These types of cases use the "hybrid economic realties/common-law control" test or the simple "common law test" that utilize more restrictive factors than the pure "economic realities" test used by the FLSA .

Unlike with other types of cases involving social welfare legislation, common law concepts of employee and independent contractor "have been specifically rejected by the courts." *Robicheaux v.*

1

*Radcliff Material, Inc.*, 697 F.2d 661, 666. This is because, to accomplish the remedial purpose of the FLSA, courts have adopted an expansive definition of "employee." *Usery v. Pilgrim Equipment Co. Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976). In fact "of all the acts of social legislation, the FLSA has the broadest definition of employee." *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3rd Cir. 1985); *Robicheaux* 697 F.2d at 665. As the Fifth Circuit Court of Appeals has stated regarding employee status, "[c]ourts must not be overly cautious or tentative in reaching this diagnosis, for Congress intended the Act's prescriptive scope to be expansive." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987). That federal courts found insurance agents to be independent contractors in actions under the ADA, ADEA, ERISA, and Title VII is not at all dispositive in a FLSA context.

## B.  Federal courts have found insurance agents to be employees rather than independent contractors.

To the extent that other courts' decisions in non-FLSA cases regarding an insurance agent's employee/independent contractor status are helpful, there is persuasive authority that given the facts of this case, the Plaintiffs are employees. Courts applying the more restrictive common-law control test have found insurance agents to be employees rather than independent contractors. For example, the Seventh Circuit held that insurance "salesmen, by all applicable recognized standards, fall into the class of employees rather than independent contractors." *NLRB v. Phoenix Mut. Life Ins. Co.*, 167 F.2d 983 (7th Cir. 1948). Similarly, insurance agents have been found to be employees rather than independent contractors for tax purposes under a common law test. *See M.F.A. Mutual Ins. Co. v. United States*, 314 F. Supp 590, 601 (W.D. Mo. 1970). Ironically, further support for insurance agents being classified as employees is found in one of the cases cited by Defendants in their response and motion to dismiss. *See Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377 (7th Cir. 1991). In that case, the appellate court upheld the verdict of a bench trial finding an insurance agent to be an independent contractor under a *clearly erroneous* standard. *Id.* at 381. However, the court further explained that, "Perhaps if our review were *de novo* we would agree [with the Plaintiff] that [she] was an employee." *Id.* The Seventh Circuit was constrained by the "clearly erroneous" standard in reviewing the trial court's finding of fact but made clear that they favored a different conclusion. *Id.* This is true even though the court was applying the more restrictive hybrid test of Title VII rather than the FLSA's expansive "economic reality" test. *Id.* at 379-380. The Defendants cite *Knight* in support of their request that this Court find as a matter of law that Plaintiffs are independent contractors. *Knight* is hardly supportive of such a motion. *See Wilson v. United Farm Bureau Mutual Ins. Co.*, No. IP 93-1460-C H/G, 1995 WL 378521 at *7; *Knight v. United Farm Bureau Mutual Ins. Co.*, No. S89-199 1990 WL 106725.

What these cases make clear is that there is no blanket rule that insurance agents are independent contractors as the Defendants would have this Court believe. Instead, each case must be examined on its own facts.

C.   **The Plaintiffs are not mere insurance agents but have been promoted to recruiters and middle managers integral to Defendants' insurance sales company.**

The Plaintiffs in this and its sister cases are not insurance agents but constitute the middle management of Defendants' company. While Plaintiffs may have started out as insurance agents, they have been promoted within the company to the positions of ASL, RSL, and DSL. In these roles Plaintiffs are integral to the company's supervision, management, and recruitment of insurance agents. Without the ASL's, RSL's, and DSL's, Cornerstone could not function. Cornerstone is not an insurance company in that it underwrites no policies. Instead it is an insurance sales company that sells the policies underwritten by a related company. It was the job of Plaintiffs to supervise and recruit the sales force to make those sales. Without them, Cornerstone would have had no function or utility at all to the underwriting company. The underwriting company could simply have hired independent contractor agents to sell its policies on its own. The value added by Cornerstone was the management and recruiting provided by the Plaintiffs.

II.   **Plaintiffs are employees under the FLSA's economic reality test.**

The factors to be considered in establishing employee status under the FLSA are: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the putative employee and employer; (3) the degree to which the employee's opportunity for profit and loss is determined by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the work is integral to the alleged employer's business. *See Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1043 5th Cir. 1987); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994). Applying the facts to these factors in Plaintiffs' case reveals them to be employees of Defendants.

A.   **Degree of Control**

Plaintiffs are District Sales Leaders at Cornerstone. Cornerstone exerted significant control over all aspects of Plaintiffs' work and careers. Defendants dictated their business schedules, requiring them to perform specific tasks each week according to a schedule. (Plaintiff's Aff. ¶ 4). Defendants' submission that Plaintiffs were completely free to set their own hours is implausible given their job duties.

Defendants further exercised control over Plaintiffs by setting the policies for the way they conducted their job of training Cornerstone agents. (Plaintiff's Aff. ¶ 4). Further, Defendants controlled what advertising and business generation devices were available to Plaintiffs and the agents under them. (Plaintiff's Aff. ¶ 6). This type of control goes well beyond the Defendants' characterization of their degree of control as merely insuring compliance with regulations. Defendants also kept human resource records on Plaintiffs and could promote or demote them within the company. (Plaintiff's Aff. ¶¶ 3 and

3

10). There can be nothing more indicative of an employer/employee relationship than the ability to promote and demote the putative employee.

Defendants also exercised control by preventing Plaintiffs and the agents under their supervision from selling any insurance products other than Cornerstone's. (Plaintiff's Aff. ¶ 8). Had Plaintiffs attempted to contract with another company to train and supervise their sales force they would have been in breach of their employment contract. This made them completely dependent on Defendants for their livelihood, the touchstone for employee status under the FLSA. *See Robicheaux*, 697 F.2d at 666. Control over the product sold indicates an employee/employer relationship. *Brock*, 814 F.2d at 1049.

### B.    Relative investment

The relative investment of Plaintiffs is dwarfed by that of Defendants. Cornerstone is a company worth hundreds of millions of dollars encompassing massive advertising, human resources, accounting, and logistical elements. (Plaintiff's Aff. ¶ 15). Plaintiffs invested no "up front" cash at the DSL level. The only investment they made was in the form of "charge backs." Plaintiffs were not subject to the losses of Cornerstone beyond their own office. (Plaintiff's Aff. ¶ 11).

In this factor of the economic reality test it is risk capital that is legally relevant, not minimal required expenses. *Id.* at 1052. In *Brock*, the operators purchased a number of items that they needed to effectively conduct business within the guidelines set forth by the employer. The Court said that the investments made by the operators were legally irrelevant and minimal when the overwhelming majority of risk capital was supplied by the employer. Further, the Court held that to claim as investment those expenses incurred in order to comply with employer guidelines would be "simply bootstrapping" and should not be considered. *Id.* Plaintiffs were required to pay a portion of the cost of the leads for the agents within their area on a "charge back" basis. (Hopkins' Aff. ¶ 16). To claim this as investment that outweighs that of Cornerstone is not only unbelievable but also exactly the type of bootstrapping rejected in *Brock*. Furthermore, a large portion of the expenses for overhead required by Cornerstone of its ASL's, RSL's and DSL's was offset by Cornerstone's policies requiring agents to "kick-up" money outside of any earnings to pay for them. (Hopkins' Aff. ¶ 16). When taken as a whole, the relative investment factor weighs heavily in favor of employee status.

### C.    Opportunity for profit and loss

Defendants set the prices for all insurance sold by Plaintiffs and the agents under their supervision. They had no control to alter, adjust, or negotiate these prices. (Plaintiff's Aff. ¶ 12). Further, Cornerstone had complete control over the commission scheme between Plaintiffs and the agents and other employees. They had no discretion to negotiate or renegotiate this structure. (Plaintiff's Aff. ¶ 13). Further, Cornerstone had control over the boundaries within which Plaintiffs could buy leads for the agents in their districts. Plaintiffs had to get approval in distributing leads to the agents in their districts.

4

Finally, Cornerstone could mandate the number of leads they took for their districts and cap the number that were available to them by decreasing the size of their districts. (Plaintiff's Aff. ¶ 7). Thus, Defendants controlled every aspect of Plaintiffs' ability to make a profit except for their hustle and effort. (Plaintiff's Aff. ¶ 14).

Given that Plaintiffs were not responsible for losses outside of their own office and that the risk capital invested by them was relatively minimal, it is clear they earned through their labor. *See Brock*, 847 F.2d 1042.

### D.   Skill and Initiative

The "skill and initiative" factor also weighs in favor of employee status. Experience, hard work and congeniality increase success and efficiency in any business operation, however, they do not indicate independent contractor status. *See Brock*, 847 F.2d at 1053. Plaintiffs had no training in the insurance industry when they started working for Cornerstone. The main skills that were needed in their job were the ability to talk with people and the knowledge of the insurance industry that they gained from their employment with Cornerstone. (Plaintiff's Aff. ¶ 17 and Hopkins' Affidavit ¶ 19). The fact that the skills Plaintiffs obtained in the insurance industry came as a result of training and experience they received at Cornerstone further indicate their employee status. *See Phoenix*, 167 F.2d at 987-988.

### E.   Permanency of relationship

To refute the permanency of the relationship, Defendants point to the sole fact that either party could terminate the employment. If this were sufficient, then it would follow that any employment-at-will contract would not indicate permanence and employee status. It is simply not the goal of the FLSA to be so exclusive. See *Halferty v. Pulse Drug Co.*, 821 F.2d 261(5th Cir. 1987) (where employee at will was found to be permanent). More importantly, Plaintiffs would not have been able to terminate the Cornerstone contract and take their organization to another insurance company. They had nothing to transfer but their own recruiting and training ability. The Fifth Circuit has held that such a situation evidences permanence and dependence. *See Usery*, 527 F.2d at 1314. In any event, Plaintiffs were with Cornerstone for several years. This strongly indicates a permanent employee relationship.

### F.   Extent to which work is integral to business

As discussed previously, Cornerstone is an insurance sales business rather than a classic insurance company. Plaintiffs occupied a role of middle management in the company in that their main duties were recruiting and training a portion of the sales force for the company. (Plaintiff's Aff. ¶¶ 2 and 4). Cornerstone's sole means of making a profit was through the sales force supervised in part by Plaintiffs. (Plaintiff's Aff. ¶ 18). Without that sales force there essentially would be no Cornerstone. (Plaintiff's Aff. ¶ 18). Therefore, it is hard to imagine a situation where a putative employee's work was more integral to the company.

### G.    Other factors

Defendants point to the fact that Plaintiffs were paid on a commission basis as evidence that they were independent contractors. However, "[t]he method of payment is legally irrelevant to a finding of control or to any other finding relating to employee status." *Brock*, 814 F.2d at 1049. Defendants further argue that Plaintiffs are not employees because they supposedly had no company provided benefits. This is simply inaccurate. Plaintiffs were compensated with stock options as a benefit of their employment. (Plaintiff's Aff. ¶ 10). It is highly unusual that an independent contractor would receive stock options from a company. It is much more consistent with an employee benefit.

### III.    Defendants' arguments concerning estoppel and Plaintiffs' past subjective beliefs are without merit.

Defendants' argument that Plaintiffs are judicially estopped from taking the position that they are employees rather than independent contractors must fail because they cannot show the elements necessary to invoke estoppel. "A court should only apply estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). Defendants point to one instance of deposition testimony by a Plaintiff, Chris Fox, where he took the position that he was an independent contractor. However, there is no showing that the Plaintiff ever convinced a court to adopt his position. For this reason alone, Defendants' estoppel argument must fail. Even if Fox's characterization of his employment was grounds for judicial estoppel it would certainly not bar the other Plaintiffs as the Defendants seem to contend.

Further, it is clear from the evidence in this case that Fox took his position out of inadvertence. He believed that he was an independent contractor because of the Defendants' scheme of misclassification.

Not only are the Defendants not entitled to estoppel, the Court should not even consider Fox's prior subjective belief. A determination of whether a worker is an "employee" under the FLSA depends on the underlying economic realities. The employer's good faith does not excuse his obligation to pay what is due under the FLSA. Nor does it matter that the parties had no intention of creating an employment relationship. Application of the FLSA does not turn on subjective intent. It is sufficient that one person suffer or permit another to work. *Brennan v. Partida*, 492 F.2d 707 (5th Cir. 1974); *See also Usery*, 527 F.2d at 1315 ("A person's subjective opinion that he is a businessman rather than an employee does not change his status." Also, "Neither contractual recitations nor subjective intent can mandate the outcome in these cases.).

Further, Defendants' repeated attempts to rebut Plaintiffs' employee status with the "Cornerstone Agent Contract" are misguided. The law is clear that the economic realities of the relationship rather than

the contract are controlling. "An employee is not permitted to waive employee status" by contract. *Robicheaux*, 697 F.2d at 667.

**IV.     Plaintiffs have standing to move for injunctive relief.**

"For violations of the antiretaliation provision … the FLSA specifically provides for equitable relief in an employee suit." *Bailey v. Gulf Coast Transportation*, 280 F.3d 1333, 1335 (11th Cir. 2002)(citing 29 U.S.C. § 216). "An injunction is a prototypical example of equitable relief." *Id.*; *Mertins v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).   Therefore, the court held that the, "FLSA permits employees to obtain preliminary injunctive relief to address violations of the Act's antiretaliation provision." *Bailey*, 280 F.3d at 1337.  The Fifth Circuit has not specifically passed on this matter but the Northern District of Texas has previously ruled that there is a private right to a permanent rather than temporary injunction available to employees retaliated against under the FLSA. *Martinez v. Deaf Smith County Grain Processors, Inc.*, 583 F. Supp. 1200, 1212 (N.D. Tex. 1984).  Having recognized the standing of individuals to seek permanent injunctions, it is implicit that the Northern District would recognize the right of an individual to seek a temporary injunction.

The cases cited by Defendants in claiming that the *Bailey* case should not be followed, all fail to address the issue before the Court today or are fatally flawed authority. The cases of *Powell v. State of Florida*, 132 F.3d 677 (11th Cir. 1998); *Barrentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47 (8th Cir. 1984); and *EEOC v. Gilbarco, Inc.*, 615 F.2d 985 (4th Cir. 1980) are all cited by the Defendants as contrary authority to *Bailey* and holding that only the Secretary of Labor can seek a preliminary injunction under the FLSA to prevent retaliation.  In reality, these cases make no such holding because they all concern injunctions rising from the wage and hour provisions of the FLSA rather than the antiretaliation provision.  As the Eleventh Circuit explains while distinguishing its prior holding in *Powell*, "For violations of the wage and overtime provisions, the FLSA does not list equitable relief as an available remedy in an employee suit.  For violations of the antiretaliation provision, however, the FLSA specifically provides for equitable relief in an employee suit." *Bailey*, 280 F.3d at 1335.

Defendants also cite the cases of *Morelock v. NCR Corporation*, 546 F.2d 682 (6th Cir. 1976); *Powell v. Washington Post Co.*, 276 F.2d 651 (D.C. Cir 1959); *Roberg v. Henry Phipps, Estate*, 156 F.2d 958 (2nd Cir. 1946); and *Bowe v. Judson Burns, Inc.*, 137 F.2d 37 (3rd Cir. 1943) for the proposition that individuals do not have standing under the FLSA to seek injunctive relief.  However, each of these cases was decided prior to the 1977 amendment to 29 U.S.C. §216(b) to allow employees, " … to bring suit seeking legal *or equitable relief* for violations of the antiretaliation provision." *Bailey*, 280 F.3d at 1336. Therefore, the cases are no longer authoritative on this issue.

Finally, the Defendants cite *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 837 (N.D. Ill. 1998) as contrary authority to *Bailey*.  While the District Court in *Bjornson* did hold that individuals have

7

no standing to seek injunctive relief under the FLSA to prevent retaliation, the case is highly suspect authority. As the Eleventh Circuit explained, "We find [the *Bjornson*] approach to be contrary to the plain language of § 216(b)." *Bailey*, 280 F.3d at 1335, n. 3. The Court then goes on to point out that the *Bjornson* decision contradicts other federal court rulings including that of the Northern District of Texas in *Martinez. Id.*

Given the plain language of 29 U.S.C. § 216(b) and the state of federal court authority it is apparent that Plaintiffs do indeed have standing to seek an injunction to prevent further retaliation by Defendants in this case.

## V.     Plaintiffs are entitled to a preliminary injunction.

Plaintiffs satisfy all of the elements set forth by *Sugar Busters, LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999). Therefore, Plaintiffs should be granted their preliminary injunction. To wit, the Plaintiffs can demonstrate: a) a substantial likelihood of success on the merits in their retaliation claim; b) a substantial threat of irreparable harm; c) that the threatened injury to the Plaintiff outweighs any damage that the injunction might cause Defendants; and d) that the injunction will not disserve the public interest.

### A.     The Plaintiffs have a substantial likelihood of success on the merits.

As demonstrated above the Plaintiffs have a substantial likelihood of success in proving that they are employees of Defendants and subject to the protections of the FLSA's antiretaliation provisions. Further, it is clear on the face of the Cornerstone contracts that the Defendants' termination of owed payments to Plaintiffs were the result of Plaintiffs bringing this action. Defendants admitted as much in their letters to Plaintiffs. (Cornerstone Termination Letter )

### B.     There is a substantial threat of irreparable harm.

In this case, in retaliation for filing this lawsuit, Defendants blatantly terminated the payment of previously earned residual commissions for Plaintiffs and the Plaintiffs in the sister cases. If this conduct is not enjoined, such economic retaliation will chill other employees from filing consent to join forms or testifying as witnesses in this case and render a collective action futile. Potential opt-in plaintiffs will be faced with the "Hobson's choice" of certain termination of residual commissions in exchange for a potential recovery under the FLSA. *See Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 293 (1960). The chilling effect that retaliation will have on others has been held sufficient to show irreparable harm in the Title VII context.[1] Defendants protestations that there will be no chilling effect because the collective action question will be decided after the determination of Plaintiffs' employee status are simply not true since the contractual provision employed in Defendants' retaliation penalizes participants in the

---

[1] *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167 (11th Cir. 1988); *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986); *Holt v. The Continental Group, Inc.*, 708 F.2d 87 (2nd Cir. 1983) *cert. denied*, 465 U.S. 1030, 1038 (1984); *Segar v. Civiletti*, 516 F. Supp. 314, 320 (D.D.C. 1981).

suit regardless of the Court's ruling on the employee status issue. The provision acts as both a threat against and a penalty for bringing FLSA suits against the company regardless of their merits.

### C. Harm to Plaintiffs outweighs the harm to Defendants if the injunction is granted.

The chilling effect that Defendants' retaliatory actions will have on this litigation and the injuries to Plaintiffs who have lost their already earned residual commissions, far outweighs any speculative harm that would occur if the Court enters the injunction. Defendants do not assert that the Plaintiffs did anything inappropriate other than assert their rights under the FLSA. It is no harm at all to the Defendants that they be made to pay monies already owed to the Plaintiffs. They should not be allowed to escape these payments pursuant to a contract provision that for reasons more fully discussed below should be found void as against public policy.

### D. If issued, the injunctive relief requested will not be adverse to the public interest

The injunctive relief requested in this case is necessary to preserve the collective action process from becoming an exercise in futility. Defendants provide no evidence that the Plaintiffs breached their contracts other than filing a collective action asserting that the company has been treating them as employees under the FLSA. This is clearly a protected activity. The public interest will be served if this Court enjoins the retaliation and voids the contract provision. Otherwise potential plaintiffs will be afraid to assert their legal rights and will have to accept substandard conditions. *See Mitchell,* 361 U.S. at 292.

## VI.     The retaliatory contractual clause is against public policy and void.

Federal Courts have consistently held contractual provisions designed to deter people from exercising or reducing the rights available under the FLSA void as against public policy.[2] The Supreme Court has stated that the FLSA was intended "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. *Any custom or contract falling short of that basic policy...cannot be utilized to deprive employees of their statutory rights.*" *Jewell Ridge Coal Corp. v. Local No. 616, United Mine Workers,* 325 U.S. 161, 167 (1945) (emphasis added). An example of the Supreme Court voiding contractual provisions because they violated the public policies set forth by the FLSA is found in *Brooklyn Sav. Bank v. Maddrix Arsenal Bldg. Corp.,* 324 U.S. 893 (1945). In that case, the employer created a scheme where employees repeatedly waived their full liquidated damage for FLSA violations. The Supreme Court voided the waivers as against public policy. Waiver of liquidated damages is exactly what the retaliatory provision of the Cornerstone contract is intended to do. No matter the merits of the case, if the Plaintiffs seek to recover liquidated damages by claiming to be employees they waive residual payments under their contract. The Defendants have created for themselves a "contractual offset" against any payments of

---

[2] *Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.,* 352 F.Supp.2d 815, 821 (voiding contract and stating "A contractual agreement that limits an employee's enforcement rights can have public policy implications beyond those affecting the private parties to the contract.")

liquidated damages they may be forced to pay. This "contractual offset" may actually exceed the amount of liquidated damages, thus rendering the FLSA completely impotent.

The other purpose of the retaliatory provision of Plaintiffs contract with Defendants is to act as a deterrent to FLSA rights ever being tested. This too contravenes public policy. In passing the FLSA, "Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied." *Mitchell,* 361 U.S. at 292. If resort to statutory remedies takes on the character of a calculated risk where restitution of deficient wages might be obtainable only at the cost of loss of pay for an unpredictable period, "...employees understandably might decide that matters best be left as they are." *Id.* Accordingly, Courts can use their statutory *and equitable* power to remedy such situations. *Id.* at 296. Therefore, the retaliatory provision should be struck from the contracts regardless of this Court's decision regarding the employee/independent contractor status of the Plaintiffs.

WHEREFORE, Plaintiffs request that Plaintiffs' Application for Temporary Injunction be Granted and Defendants' Motion to Dismiss be denied, and for such other and further relief to which Plaintiffs are justly entitled.

Respectfully Submitted,

GREER & MCGILL, P.C.

BY:_____/s/Kerry L. McGill_____
Kerry McGill
State Bar No. 13628700
Joe Greer
State Bar No. 08420500
200 East Sixth Street, Suite 204
Austin, Texas 78701
(512) 476-1133
(512) 476-1139, Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th of December 2005, I have served a true copy of the above and foregoing on the adverse parties by forwarding a copy of it to all opposing counsel herein.

_____/s/Kerry L. McGill_____
Kerry L. McGill